FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 5 2019

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 4:19-CR- CC688 DPM |
| | ) | |
| v. | ) | 18 U.S.C. 2 |
| | ) | 18 U.S.C. 371 |
| LYNDA CHARLES | ) | 18 U.S.C. 1341 |
| ROSIE BRYANT | ) | 18 U.S.C. 1957 |
| DELOIS BRYANT | ) | 26 U.S.C. 7201 |
| BRENDA SHERPELL | ) | 26 U.S.C. 7206(2) |
| NIKI CHARLES | ) | |
| EVERETT MARTINDALE, and | ) | |
| JERRY GREEN | ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNTS 1-8
(Mail Fraud)

**Parties and Entities**

It is material to this Indictment that:

1.   LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT and BRENDA SHERPELL are sisters.

2.   NIKI CHARLES is the daughter of LYNDA CHARLES.  She was a Notary Public registered in the State of Arkansas, which allowed her to certify and authenticate signatures on documents.

3.   EVERETT MARTINDALE was an attorney who maintained a law practice in Little Rock, Arkansas, which was located at 902 W. 2nd Street, Little Rock, Arkansas.

4. **Destiny by Design**

a.   On or about August 23, 1999, Destiny by Design was set up as a non-profit corporation with the State of Arkansas, originally under the name Destiny by Design, Inc.

1

b.    In  or  about  February  2006,  Destiny  by  Design,  Inc.
purchased  property  which  consisted  of  a  building  with  the
address  3600  JFK  Boulevard,  North  Little  Rock,  Arkansas,  and
an  adjacent  building  with  the  address  of  105  East  "F"  Avenue,
North  Little  Rock,  Arkansas.

c.    The  building  located  at  3600  JFK  Boulevard,  North  Little
Rock,  Arkansas,  was  used  by  Destiny  by  Design  primarily  as  a
church.

d.  The  building  located  at  105  East  "F"  Avenue,  North  Little
Rock,  Arkansas  was  used  as  a  central  location  to  conduct  the
activities  described  below.

5.  **Daughters of Jovi, Inc.**

a.  On  or  about  February  28,  2014,  Daughters  of  Jovi,  Inc.  was
incorporated  under  the  laws  of  Delaware.   DELOIS  BRYANT,  LYNDA
CHARLES,  ROSIE  BRYANT  and  BRENDA  SHERPELL  were  identified  as
Directors  of  the  corporation.

b.  On  or  about  July  7,  2014,  the  incorporation  of  Daughters
of  Jovi,  Inc.  was  moved  to  the  State  of  Arkansas  and
incorporated  as  Daughters  of  Jovi  International,  LLC,  with  an
address  at  105  F.  Street  (sic),  North  Little  Rock,  Arkansas.
DELOIS  BRYANT  and  LYNDA  CHARLES  were  listed  as  the
incorporators,  with  DELOIS  BRYANT  listed  as  the  Registered
Agent.    ROSIE  BRYANT  and  BRENDA  SHERPELL  were  listed  as
members/managers.

c.  On  or  about  November  5,  2015,  on  behalf  of  Daughters  of
Jovi  International  LLC,  ROSIE  BRYANT  filed  an  application
with  the  State  of  Arkansas  for  the  corporation  to  operate  and
conduct  business  under  the  fictitious  name  "Jovi  Women  and
Hispanic  Litigation".

6.    The  United  States  Department  of  Agriculture  (USDA)  is  an
agency  of  the  United  States  government  which,  among  other  things,

2

administers services including farm loans, credits and other farm related services to farmers in the United States.

7. As more fully set out below, the Black Farmers Discrimination Litigation (BFDL) and the Hispanic, Women, Farmers and Ranchers litigation (HWFR) were legal actions concerning USDA which resulted in programs being established to evaluate and process claims of persons who were entitled to funds and benefits under the programs.

8. EPIQ is a company that, among other things, provides administrative services to government agencies. EPIQ served as the third party administrator for both the BFDL and HWFR claim processes. EPIQ worked along with an independent adjudicator to receive, evaluate, process, and, if deemed appropriate, transmit payment for claims submitted pursuant to either the BFDL settlement or HWFR administrative process.

### *Background*
### *BLACK FARMERS DISCRIMINATION LITIGATION (BFDL) SETTLEMENT*

9. In 1997, a group of African-American farmers brought a class action suit against the USDA alleging racially discriminatory actions when the farmers applied for or received farm credit, credit servicing, and non-credit farm benefits. This case was called *Pigford v. Glickman (Pigford)*.

10. In April 1999, the United States District Court for the District of Columbia approved a consent decree in *Pigford* which, among other things:

a. Established filing deadlines for claimants; and

b. Provided for a third party adjudicator and an administrator to receive, evaluate and process claims. If approved, the third party administrator also transmitted payment to the claimant.

3

11.   After the deadline to submit claims passed, there were complaints that eligible claimants were denied monies because they had not filed their claims timely.   In 2008, the United States Congress passed a Farm Bill, signed into law on June 18, 2008, which created a new right of action for claimants who had petitioned to participate in *Pigford* but whose claims had been denied as being filed late.   As a result, there were a number of new lawsuits which were eventually combined into one case called *In re Black Farmers Discrimination Litigation* (BFDL).   The Court granted final approval of a BFDL settlement agreement on October 27, 2011.   The settlement agreement established that a neutral third party would administer the claim process.   EPIQ was chosen as the third party administrator.

12.   To qualify as a BFDL claimant, a person was required to document that they had submitted a late filing request in *Pigford* between October 13, 1999 and June 18, 2008 to the appropriate party.

13.   In addition to establishing that they had submitted a late filing request, the claimant also had to submit a Class Action Claim Form detailing specifics of the alleged discrimination, that is, the claimant:

a. Was an African American;

b. Between January 1, 1981 and December 31, 1996,

   i. farmed or attempted to farm;

   ii. owned or leased, or attempted to own or lease, farm land;

   iii. applied or attempted to apply to the USDA for participation in a federal farm credit or benefit program(s) and, if the claimant applied rather than attempted to apply, one of the following occurred:

4

> (a)  The claimant was denied participation in a federal farm credit or benefit program(s); or
>
> (b)  The claimant's loan or other benefit was provided late, approved for a lesser amount than requested, or burdened by restrictive conditions; or
>
> (c) The claimant received a loan with unfair terms; or
>
> (d) The claimant did not receive appropriate loan service from the USDA;
>
> iv. suffered economic or financial loss as a result of the USDA's treatment of the application(s);
>
> v. believed they were discriminated against on the basis of race; and
>
> vi. complained of discrimination to an official of the United States Government on or before July 1, 1997 regarding USDA's treatment.

14.   Class Action Claim Forms could also be submitted on behalf of an estate of a deceased person or an individual who was unable to submit their own claim due to a mental or physical disability if the claimant had met the criteria in paragraphs 12 and 13 above.  The individual submitting the claim form had to be a legal representative for the estate/individual and had to submit documentation to include a death certificate, if applicable, and proof of legal representation.

15.   A claimant could, but was not required to, hire an attorney to present the claim.  If an attorney filed the claim, the attorney was required to sign and date the following declaration:

> "I swear under penalty of perjury, that to the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the claim is

5

supported by existing law, and the factual contentions
have evidentiary support."

16. The claimant signed the claim form under penalty of
perjury. The claimant's declaration stated the answers declared
in the claim form and all enclosures were true and correct.

17. The claimant was required to designate a Track under which
the claim would be processed. All BFDL claims referred to in this
Indictment were processed under Track A which entitled the claimant
to a gross financial award of $62,500. The award was disbursed by
issuing a check for $50,000 and transferring $12,500 to the
Internal Revenue Service as a tax withholding to cover the cost of
taxes expected to be due and owing on the claim award. If the
claimant was represented by an attorney, the disbursement check
was made payable jointly to the claimant and the attorney.

18. The attorney for a claimant was restricted to a fee not
to exceed $1,500 per claimant.

19. Claim Forms were submitted by United States mail or a
commercial carrier to the claims processor, EPIQ, in or around
Portland, Oregon.

20. All claim checks sent by EPIQ were sent via the United
States Postal Service.

### HISPANIC AND WOMEN FARMERS AND RANCHERS (HWFR) LITIGATION

21. In 2000, groups of Hispanic and women farmers and
ranchers (HWFR) filed separate lawsuits against USDA. Similar to
the *Pigford* and *BFDL* litigation, the lawsuits alleged that the
USDA discriminated in its farm benefit programs on the basis of
race, ethnicity, and gender.

22. As part of the Farm Bill of 2008, the United States
Congress directed through legislation that all pending class
actions brought against USDA by socially disadvantaged farmers or
ranchers, including Hispanics and women, which were based on

6

racial, ethnic, or gender discrimination in farm program participation, be resolved in an expeditious and just manner.

23. On February 25, 2011, eight months prior to the consent decree entered in the *BFDL* case, the USDA, in conjunction with the United States Department of Justice, announced that it had established a voluntary administrative claims process to resolve discrimination allegations by eligible Hispanic and women farmers and ranchers. The claims process offered a streamlined alternative to litigation. The claims were to be filed with a third party administrator, that is, EPIQ, for evaluation, processing and, if approved, payment.

24. In order to qualify for an award, the claimant had to submit a claim form detailing specifics of the alleged discrimination, that is, the claimant:

a. Was either Hispanic/Latino or a female;

b. Between January 1, 1981 and December 31, 1996, or between October, 1998 and October, 2000

    i. farmed or attempted to farm;

    ii. owned or leased, or attempted to own or lease, farm land;

    iii. applied or attempted to apply to the USDA for participation in a federal farm credit or benefit program(s) and

    iv. believed they were discriminated against on the basis of ethnicity or gender;

    v. For those who applied for a loan or benefit,

        (a) they suffered economic harm; and

        (b) they filed an administrative discrimination complaint on or before July 1, 1997 regarding their treatment by USDA.

    vi. For those who attempted to apply, they either

7

        (a) filed a written complaint with the USDA within
             1 year of the incident; or

        (b) filed a sworn, verified, or notarized written
             witness statement (Verified Statement-
             Affidavit) from someone who witnessed the
             alleged incident.

25.   Claim Forms could also be submitted on behalf of an estate of a deceased person or an individual who was unable to submit their own claim due to a mental or physical disability if the claimant had met the criteria in paragraph 24 above.   The individual submitting the Claim Form had to be a legal representative for the estate/individual and had to submit documentation to include a death certificate, if applicable, and proof of legal representation.

26.   A claimant could, but was not required to, hire an attorney to present the claim.   If an attorney filed the claim, the attorney was required to sign and date the following declaration:

> "I swear under penalty of perjury, that to the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the claim is supported by existing law, and the factual contentions have evidentiary support."

27.   If an attorney assisted with filing a HWFR claim, the attorney fees were restricted to no more than $1,500 per claimant.

28.   The claimant signed the applications under penalty of perjury.   The claimant's declaration stated the answers declared in the claim form and all enclosures were true and correct.

29.   With regard to the Verified Statement-Affidavit, the Statement-Affidavit was to be from a person who had witnessed the alleged discrimination, and was to be signed by that person under

penalty of perjury.  The statement was to be verified by a notary as having been subscribed and sworn in the notary's presence.

30.  The claimant was required to designate a Tier under which the claim would be processed.  All HWFR claims referred to in this Indictment were submitted under Tier 1(a) or Tier 2.  Claims submitted under Tier 2 that did not qualify for that Tier were automatically processed by the Claim Administrator under Tier 1(a).  Whether Tier 1(a) or Tier 2, a successful claim entitled the claimant to a gross financial award of $62,500. The award was disbursed by issuing a check for $50,000 payable to the claimant, and transferring $12,500 to the Internal Revenue Service as a tax withholding to cover the cost of taxes expected to be due and owing on the claim award.

### *The charge.*

31.  Beginning in or about June 2008, and continuing through in or about November 2017, in the Eastern District of Arkansas, and elsewhere, the defendants,

LYNDA CHARLES
ROSIE BRYANT
DELOIS BRYANT
BRENDA SHERPELL
NIKI CHARLES
and EVERETT O. MARTINDALE

together with other individuals, known and unknown to the Grand Jury, aiding and abetting one another, knowingly and intentionally devised and participated in a scheme to defraud the United States of America by depriving it of property.

### *Means and Manner of the scheme to defraud.*

32.  LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT, BRENDA SHERPELL and NIKI CHARLES solicited people to file claims with the United States in which the claimant asserted that he/she was entitled to settlement funds based on past discrimination against

them.  It was part of their efforts to obtain more claimants that these defendants used other persons to act as recruiters for additional claimants and paid some of them for doing so.  The additional claimants were sought for the BFDL settlement, the HWFR program, and for future settlements and programs which the defendants believed might come available for claims.

33.  EVERETT O. MARTINDALE purported to act as the legal representative for each of the claimants except for BFDL 12, BFDL 21, and BFDL 75.

34.  Each of the claims listed below was false as to material matters concerning the true eligibility of the claimant.

35.  As set forth in Paragraph 12 above, each BFDL claimant had to establish that he/she was a member of the class and therefore entitled to submit a claim.  One or more of the defendants falsified documents which were transmitted to EPIQ by defendant MARTINDALE to fraudulently establish class eligibility by the claimants.  The names of all of the BFDL claimants purported to be represented by MARTINDALE and referenced in this Indictment were included in these falsified documents.

36.  Each of the HWFR claims referenced in this Indictment contained a Verified Statement-Affidavit as described in Paragraphs 24 and 29 above.  Each Verified Statement-Affidavit in this matter was notarized and verified by defendant NIKI CHARLES even though none of the Verified Statement-Affidavits were actually signed in her presence by the witness purporting to verify the acts of discrimination referenced in the claim.

37.  For the BFDL claimants represented by MARTINDALE, the claimant checks were issued jointly in the name of the claimant and EVERETT O. MARTINDALE as the legal representative of the claimant.  For the HWFR claimants, the checks were issued in the name of the claimant alone.  Both the BFDL checks and the HWFR checks were mailed via the United States Postal Service from EPIQ,

Portland, Oregon to MARTINDALE at his law firm in Little Rock, Arkansas.

38.   MARTINDALE deposited the BFDL checks into his law firm trust account, and issued a check from his trust account to the claimant for the claim.  MARTINDALE withheld his attorney fee from the settlement checks and issued the claimant a check for the claim amount minus the attorney fees.

39.   On or about November 18, 2013, MARTINDALE paid LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT and BRENDA SHERPELL $45,300 each from the proceeds received from the BFDL claims.

40.   As to the HWFR payments:

a. In or about July and August, 2014, defendants LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT, BRENDA SHERPELL and EVERETT MARTINDALE entered an agreement in which MARTINDALE agreed to split the attorney fee of $1,500 per claim with each of these five defendants receiving one-fifth of the fee.

b. When MARTINDALE received the claimant's checks from EPIQ, he provided the checks to one or more of the other defendants rather than to the claimant.

c. After receiving the claimant checks, the other defendants paid MARTINDALE his one-fifth of the attorney's fees and kept the remainder of the fee.

41.   As to both BFDL and HWFR claims, one or more of the defendants demanded and received a portion of the claim amount from the claimants over and above the permitted amount of attorney fees.

a. In order to obtain funds from the claimants, the defendants used a variety of methods, including directing the claimant to obtain funds in multiple forms and amounts, that is, the defendants directed that the claimant obtain a combination of one or more cashier's checks, one or more money orders, and/or cash which were then delivered to one of the defendants.

11

b.  The defendant ROSIE BRYANT deposited and caused to be deposited portions of the cash she obtained into bank accounts in amounts less than $10,000 in an effort to prevent the financial institution from filing a mandatory report with the United States Department of Treasury.

42.  Each claimant is identified herein by the program under which he/she submitted the claim and a numeric designation, that is, BFDL 1-102 and HWFR 1-90.

### The Mailings

43.  *The BFDL submissions.* On or about the dates listed below, in the Eastern District of Arkansas, and elsewhere, for the purpose of executing the scheme to defraud, the defendants caused and attempted to cause claim forms for the claimants identified below, to be sent from Little Rock, Arkansas, to the claim administrator at EPIQ in Oregon, in the following manner:  the claims sent on 2/25/12, 4/12/12, 10/22/13, and in or about May 2012, were mailed via United States Postal Service to the Claim Administrator, P.O. Box 2048, Portland, Oregon;  the claims sent on 7/10/12, 7/25/12, and 9/20/12 were sent via United Parcel Service (UPS) to the Claim Administrator, 10300 SW Allen Blvd, Beaverton, Oregon:

| DATE | CLAIMANT(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2/25/2012 | BFDL 21 | | | | | | | |
| 4/12/2012 | BFDL 12 | | | | | | | |
| 5//2012 | BFDL 75 | | | | | | | |
| 7/10/2012 | BFDL 3 | BFDL 4 | BFDL 5 | BFDL 7 | BFDL 8 | BFDL 11 | BFDL 13 | BFDL 14 |
| | BFDL 17 | BFDL 19 | BFDL 23 | BFDL 29 | BFDL 31 | BFDL 32 | BFDL 34 | BFDL 35 |
| | BFDL 36 | BFDL 37 | BFDL 38 | BFDL 39 | BFDL 40 | BFDL 42 | BFDL 43 | BFDL 46 |
| | BFDL 49 | BFDL 51 | BFDL 52 | BFDL 53 | BFDL 54 | BFDL 57 | BFDL 58 | BFDL 59 |
| | BFDL 60 | BFDL 67 | BFDL 68 | BFDL 69 | BFDL 72 | BFDL 73 | BFDL 76 | BFDL 77 |
| | BFDL 83 | BFDL 84 | BFDL 85 | BFDL 86 | BFDL 87 | BFDL 90 | BFDL 91 | BFDL 92 |
| | BFDL 93 | BFDL 96 | BFDL 100 | BFDL 101 | | | | |
| 7/25/2012 | BFDL 6 | BFDL 16 | BFDL 22 | BFDL 33 | BFDL 50 | BFDL 56 | BFDL 61 | BFDL 70 |
| | BFDL 71 | BFDL 88 | BFDL 97 | BFDL 99 | | | | |
| 9/20/2012 | BFDL 1 | BFDL 2 | BFDL 9 | BFDL 10 | BFDL 15 | BFDL 18 | BFDL 20 | BFDL 24 |
| | BFDL 25 | BFDL 26 | BFDL 27 | BFDL 28 | BFDL 30 | BFDL 44 | BFDL 45 | BFDL 47 |
| | BFDL 48 | BFDL 55 | BFDL 62 | BFDL 63 | BFDL 64 | BFDL 65 | BFDL 66 | BFDL 74 |
| | BFDL 78 | BFDL 79 | BFDL 80 | BFDL 81 | BFDL 82 | BFDL 89 | BFDL 94 | BFDL 95 |
| | BFDL 98 | BFDL 102 | | | | | | |
| 10/22/2013 | BFDL 41 | | | | | | | |

44. ***The HWFR submissions.*** On or about the dates listed below, in the Eastern District of Arkansas, and elsewhere, for the purpose of executing the scheme to defraud, the defendants caused and attempted to cause claim forms for the claimants identified below, to be sent from Little Rock, Arkansas, by the United States Postal Service addressed to USDA Hispanic/Women Farmer/Rancher Claim Administrator, P.O. Box 4540, Portland, Oregon:

| DATE | CLAIMANT(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3/25/2013 | HWFR 3 | HWFR 4 | HWFR 6 | HWFR 7 | HWFR 12 | HWFR 13 | HWFR 15 | HWFR 18 |
| | HWFR 22 | HWFR 26 | HWFR 27 | HWFR 32 | HWFR 48 | HWFR 50 | HWFR 53 | HWFR 61 |
| | HWFR 62 | HWFR 64 | HWFR 65 | HWFR 67 | HWFR 68 | HWFR 77 | HWFR 82 | HWFR 83 |
| | HWFR 84 | HWFR 86 | HWFR 87 | HWFR 88 | | | | |
| 4/29/2013 | HWFR 1 | HWFR 2 | HWFR 5 | HWFR 8 | HWFR 9 | HWFR 10 | HWFR 11 | HWFR 14 |
| | HWFR 16 | HWFR 17 | HWFR 19 | HWFR 20 | HWFR 21 | HWFR 23 | HWFR 24 | HWFR 25 |
| | HWFR 28 | HWFR 29 | HWFR 30 | HWFR 31 | HWFR 33 | HWFR 34 | HWFR 35 | HWFR 36 |
| | HWFR 37 | HWFR 38 | HWFR 39 | HWFR 40 | HWFR 41 | HWFR 42 | HWFR 43 | HWFR 44 |
| | HWFR 45 | HWFR 46 | HWFR 47 | HWFR 49 | HWFR 51 | HWFR 52 | HWFR 54 | HWFR 55 |
| | HWFR 56 | HWFR 57 | HWFR 58 | HWFR 59 | HWFR 60 | HWFR 63 | HWFR 66 | HWFR 69 |
| | HWFR 70 | HWFR 71 | HWFR 72 | HWFR 73 | HWFR 74 | HWFR 75 | HWFR 76 | HWFR 78 |
| | HWFR 79 | HWFR 80 | HWFR 81 | HWFR 85 | HWFR 89 | HWFR 90 | | |

45. ***The BFDL check distribution.*** On or about the dates listed below, in the Eastern District of Arkansas, and elsewhere, for the purpose of executing the scheme to defraud, the defendants caused and attempted to cause claim settlement checks to be distributed from *In Re Black Farmers Discrimination Litigation Claim Administrator* for the claimants identified below, and to be sent from Portland, Oregon via United States Postal Service to EVERETT O. MARTINDALE, Attorney, 902 W. 2nd Street, Little Rock, Arkansas, except for the checks for BFDL 12, BFDL 21, and BFDL 75 which were sent via United States Postal Service directly to the claimant or the claimant's executor:

| DATE | CLAIMANT(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/3/2013 | BFDL 1 | BFDL 2 | BFDL 3 | BFDL 4 | BFDL 5 | BFDL 6 | BFDL 7 | BFDL 8 |
| | BFDL 9 | BFDL 10 | BFDL 12 | BFDL 13 | BFDL 14 | BFDL 15 | BFDL 16 | BFDL 17 |
| | BFDL 18 | BFDL 20 | BFDL 22 | BFDL 24 | BFDL 25 | BFDL 26 | BFDL 27 | BFDL 28 |
| | BFDL 29 | BFDL 31 | BFDL 32 | BFDL 33 | BFDL 34 | BFDL 35 | BFDL 36 | BFDL 37 |
| | BFDL 38 | BFDL 39 | BFDL 40 | BFDL 42 | BFDL 43 | BFDL 44 | BFDL 45 | BFDL 46 |
| | BFDL 47 | BFDL 48 | BFDL 49 | BFDL 50 | BFDL 53 | BFDL 54 | BFDL 55 | BFDL 56 |
| | BFDL 57 | BFDL 58 | BFDL 59 | BFDL 60 | BFDL 61 | BFDL 62 | BFDL 65 | BFDL 66 |
| | BFDL 67 | BFDL 68 | BFDL 69 | BFDL 73 | BFDL 74 | BFDL 75 | BFDL 76 | BFDL 77 |
| | BFDL 79 | BFDL 80 | BFDL 84 | BFDL 85 | BFDL 86 | BFDL 87 | BFDL 88 | BFDL 89 |
| | BFDL 90 | BFDL 92 | BFDL 93 | BFDL 94 | BFDL 96 | BFDL 97 | BFDL 98 | BFDL 99 |
| | BFDL 100 | BFDL 101 | BFDL 102 | | | | | |
| 10/11/2013 | BFDL 72 | | | | | | | |
| 10/31/2013 | BFDL 70 | BFDL 71 | | | | | | |
| 11/20/2013 | BFDL 19 | BFDL 23 | BFDL 30 | BFDL 82 | BFDL 91 | | | |
| 12/17/2013 | BFDL 21 | BFDL 28 | BFDL 51 | BFDL 52 | BFDL 95 | | | |
| 1/18/2014 | BFDL 81 | | | | | | | |
| 2/12/2014 | BFDL 64 | BFDL 78 | | | | | | |

46.   *Counts 1-8:   HWFR check distribution.* On or about the date listed below, in the Eastern District of Arkansas, and elsewhere, for the purpose of executing the scheme to defraud, the defendants caused and attempted to cause claim settlement checks to be distributed from *Hispanic & Women Farmers and Ranchers Claim Administrator* for the claimants identified below, and to be sent from Portland, Oregon to EVERETT O. MARTINDALE, Attorney, 902 W. 2nd Street, Little Rock, Arkansas, by United States Postal Service:

| COUNT | DATE | CLAIMANT(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 7/24/2015 | HWFR 51 | | | | | | | |
| 2 | 8/25/2015 | HWFR 26 | | | | | | | |
| 3 | 9/10/2015 | HWFR 3 | HWFR 4 | HWFR 6 | HWFR 12 | HWFR 13 | HWFR 15 | HWFR 18 | HWFR 22 |
| | | HWFR 27 | HWFR 44 | HWFR 47 | HWFR 48 | HWFR 49 | HWFR 50 | HWFR 53 | HWFR 55 |
| | | HWFR 61 | HWFR 62 | HWFR 64 | HWFR 65 | HWFR 67 | HWFR 68 | HWFR 77 | HWFR 79 |
| | | HWFR 82 | HWFR 83 | HWFR 84 | HWFR 86 | HWFR 87 | HWFR 88 | | |
| 4 | 9/25/2015 | HWFR 19 | HWFR 31 | HWFR 46 | HWFR 52 | HWFR 57 | HWFR 58 | HWFR 59 | HWFR 69 |
| | | HWFR 73 | HWFR 76 | | | | | | |
| 5 | 10/9/2015 | HWFR 1 | HWFR 2 | HWFR 11 | HWFR 17 | HWFR 21 | HWFR 24 | HWFR 28 | HWFR 29 |
| | | HWFR 30 | HWFR 33 | HWFR 34 | HWFR 35 | HWFR 36 | HWFR 37 | HWFR 38 | HWFR 43 |
| | | HWFR 45 | HWFR 54 | HWFR 56 | HWFR 60 | HWFR 63 | HWFR 66 | HWFR 70 | HWFR 71 |
| | | HWFR 72 | HWFR 75 | HWFR 78 | HWFR 80 | HWFR 81 | HWFR 85 | HWFR 89 | HWFR 90 |
| 6 | 11/6/2015 | HWFR 5 | HWFR 8 | HWFR 9 | HWFR 14 | HWFR 16 | HWFR 32 | HWFR 39 | HWFR 41 |
| | | HWFR 74 | | | | | | | |
| 7 | 1/13/2016 | HWFR 25 | | | | | | | |
| 8 | 1/20/2016 | HWFR 20 | | | | | | | |

All in violation of Title 18, United States Code, Section 1341 and 2.

16

## COUNT 9

(Conspiracy to defraud the government)

The Grand Jury realleges paragraphs 1, 17 and 30 from Counts 1-8 of this Indictment.

It is pertinent to this Indictment that:

**A.   *The Internal Revenue Service and pertinent tax provisions***

1.   The Internal Revenue Service (IRS) is part of the United States Department of Treasury, a department and agency of the United States of America, charged with the responsibility to determine, compute, assess, and collect income taxes.

2.   IRS Form 1040 is an individual income tax return that is filed for a calendar year.

3.   IRS Form 1040X is an amended individual income tax return that is filed for a calendar year.

4.   IRS Form 1041 is an estate tax return that is filed for a calendar year.

5.   IRS Schedule A is a form on which a taxpayer reports expenses which are deductible in determining the taxable income of the taxpayer.  The total Itemized Deductions are reported on line 29 of Schedule A, and line 40 of Form 1040 for an Individual Return.  For Form 1041, the total Itemized Deductions are reported on Line 13.

6.   IRS Schedule C is a form on which a taxpayer reports Profit and Loss from Business.  Total Expenses are listed on line 28 of Schedule C.  The Net Profit or Loss is listed on line 31 of Schedule C, and on line 12 of Form 1040 for an Individual Return, or on line 3 of Form 1041 for an Estate Return.

7.   IRS Schedule F is a form on which a taxpayer reports Profit and Loss from Farming.  Gross income is listed on line 9 of

Schedule F.  The Net Profit or Loss is listed on line 34 of Schedule F, and on line 18 of Form 1040 for an Individual Return, or line 6 of Form 1041 for an Estate Return.

8.   The money received pursuant to a BFDL or HWFR claim was income to the claimant and should have been reported on the claimant's tax return as "Other Income".  For a claimant filing a Form 1040, the income should have been reported on Line 21.  For a claimant filing a Form 1041, the income should have been reported on Line 8.

### B.   The Charge

From in or about February 2014 through in or about November 2017, in the Eastern District of Arkansas and elsewhere,

LYNDA CHARLES
DELOIS BRYANT
ROSIE BRYANT
BRENDA SHERPELL
and
JERRY GREEN

conspired with one another, and with others known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the IRS in the ascertainment, computation, assessment, and collection of income taxes.

### Means and Manner of the Conspiracy

It was part of this conspiracy that:

1.   For the BFDL claims which were paid in 2013 and 2014, the defendants LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT and BRENDA SHERPELL arranged for tax preparation services in Texas to prepare and file tax returns for the claimants and submitted all the tax returns for BFDL through those tax preparers.  During the pertinent time period, the defendant JERRY GREEN worked for the tax preparation service that filed the BFDL claimant tax returns.

2.   Prior to the filing of tax returns for the HWFR claims in 2015, the defendant JERRY GREEN established his own tax preparation service.

3.   For the HWFR claims which were paid in 2015, the defendants LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT and BRENDA SHERPELL arranged for the tax preparation service operated by JERRY GREEN to prepare and file tax returns for claimants who had submitted HWFR claims.   The defendant JERRY GREEN's tax preparation service established a satellite office at 105 East "F" Avenue, North Little Rock, Arkansas to facilitate the preparation and submission of the 2015 tax returns.   All of the tax returns referenced below for tax year 2015 were submitted through this tax preparation service.

4.   Each of the tax returns, whether involving BFDL or HWFR payments, was to be prepared in such a manner that the claimant would be entitled to receive as a refund most, if not all, of the $12,500 paid to the IRS as income tax withholding.

5.   In order to accomplish the objective of creating a tax refund, the information on the return was falsified in one or more of the following ways:

a. The income received by the claimant for their BFDL or HWFR claim was not reported or not reported in full;

b. By claiming itemized deductions to which the claimant was not entitled;

c. By claiming a net loss for a business activity on Schedule C which reduced or negated taxable income;

d. By claiming a net loss for farming activity on Schedule F which reduced or negated taxable income;

e. By claiming more tax withholding than had actually been withheld.

6.   The BFDL claim payments were paid in 2013 except for the claim by BFDL 78 which was paid in 2014.   The HWFR claim payments

were paid in 2015.   The false tax returns were for the year in which the claimant/taxpayer received the payment.

7.  The defendants caused returns to be filed for some claimant/taxpayers as though the taxpayer was an Arkansas resident when in fact the taxpayer was not, that is, for the returns of BFDL 9, BFDL 10, BFDL 65, BFDL 77, BFDL 89, BFDL 97, and BFDL 98, all of whom were residents of Texas; for the returns of BFDL 16-17 and BFDL 22 who were residents of Georgia; and for the return of HWFR 60 who had been a resident of Ohio.

8. For claimant/taxpayers, BFDL 14-15, BFDL 21, BFDL 55, BFDL 55a, BFDL 73, BFDL 95, HWFR 18, HWFR 47 and HWFR 55, the defendants used and caused to be used an address that was not the claimant/taxpayer's true address, but was an address associated with one of the defendants or an entity controlled by one of the defendants.

9. The information provided to the tax preparation service for the tax returns, including the falsified information, was provided to the tax preparation service by one or more of the defendants.

10. As part of the conspiracy, the defendants filed and caused to be filed eighty-two (82) false tax returns which contained false items totaling $4,615,009.

11. One or more of the defendants would receive a portion of the tax refund paid as a result of the false returns by either having an electronic payment made directly to a bank account the defendant controlled, or by requiring the claimant/taxpayer to pay her a portion of the refund after the claimant/taxpayer received it.

### *Overt Acts*

In furtherance of the conspiracy, the defendants committed and caused to be committed the following overt acts, in the Eastern District of Arkansas and elsewhere, that is, the filing of each of the tax returns on the dates listed in Counts 10-91 below which are incorporated herein by reference.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 10-91**
(Causing another to file a false tax return)

The Grand Jury realleges paragraphs A 1-7 of Count 9 of this Indictment.

On or about the date listed below, in the Eastern District of Arkansas and elsewhere,

LYNDA CHARLES
ROSIE BRYANT
DELOIS BRYANT and
BRENDA SHERPELL

along with others named and not named in this Indictment, aiding and abetting one another, willfully did counsel and advise the preparation and presentation of a tax return under the internal revenue laws that was false as to a material matter, that is, the defendants counseled, advised, and prepared tax returns for the identified taxpayer that was false in one or more of the following ways, as specified in the chart below:

a. failed to correctly report the income received by the claimant for their BFDL or HWFR claim;

b. claimed itemized deductions to which the claimant was not entitled;

c. claimed a net loss for a business activity on Schedule C which reduced or negated taxable income;

d. claimed a net loss for farming activity on Schedule F which reduced or negated taxable income;

e. claimed tax withholding that exceeded the amount actually withheld.

In each instance, the false return generated a refund to which the taxpayer was not entitled.

| CT | DATE | TAX YEAR | TAX FORM | TAX PAYER | FALSIFIED ITEMS | FALSE AMOUNT |
|----|------|----------|----------|-----------|-----------------|--------------|
| 10 | 2/23/14 | 2013 | 1040 | BFDL 55 | Unreported income<br>Schedule F expense<br>Itemized deductions | $65,477 |
| 11 | 3/19/14 | 2013 | 1040 | BFDL 3 | Unreported income<br>Schedule F expense<br>Itemized deductions | $94,368 |
| 12 | 3/20/14 | 2013 | 1040 | BFDL 9 | Unreported income<br>Schedule F expense<br>Itemized deductions | $72,756 |
| 13 | 3/20/14 | 2013 | 1040 | BFDL 10 | Unreported income<br>Schedule F expense | $59,900 |
| 14 | 3/20/14 | 2013 | 1040 | BFDL 12 | Unreported income<br>Schedule F expense<br>Itemized deductions | $68,714 |
| 15 | 3/20/14 | 2013 | 1040 | BFDL 47-48 | Itemized deductions<br>Schedule F expense | $165,993 |
| 16 | 3/20/14 | 2013 | 1040 | BFDL 98 | Itemized deductions<br>Schedule F expense | $87,008 |
| 17 | 3/22/14 | 2013 | 1040 | BFDL 93 | Unreported income<br>Schedule F expense<br>Itemized deductions | $51,160 |
| 18 | 3/25/14 | 2013 | 1040 | BFDL 16-17 | Unreported income<br>Schedule F expense<br>Itemized deductions | $131,051 |
| 19 | 3/25/14 | 2013 | 1040 | BFDL 40 | Unreported income<br>Schedule F expense<br>Itemized deductions | $63,368 |
| 20 | 3/26/14 | 2013 | 1040 | BFDL 14-15 | Unreported income<br>Schedule F expense | $117,000 |
| 21 | 3/26/14 | 2013 | 1040 | BFDL 22 | Itemized deductions<br>Schedule F expense | $54,361 |
| 22 | 3/26/14 | 2013 | 1040 | BFDL 89 | Unreported income<br>Itemized deductions | $53,625 |
| 23 | 3/28/14 | 2013 | 1040 | BFDL 77 | Unreported income<br>Schedule F expense<br>Itemized deductions | $74,388 |
| 24 | 3/28/14 | 2013 | 1040 | BFDL 92 | Unreported income<br>Schedule F expense<br>Itemized deductions | $77,073 |
| 25 | 5/13/14 | 2013 | 1040 | BFDL 53 | Itemized deductions<br>Schedule F expense | $50,154 |
| 26 | 5/15/14 | 2013 | 1040 | BFDL 24 | Schedule F expense | $134,510 |
| 27 | 5/15/14 | 2013 | 1040 | BFDL 73 | Itemized deductions<br>Schedule F expense | $59,691 |

| CT | DATE | TAX YEAR | TAX FORM | TAX PAYER | FALSIFIED ITEMS | FALSE AMOUNT |
|----|------|----------|----------|-----------|-----------------|--------------|
| 28 | 5/16/14 | 2013 | 1040 | BFDL 97 | Schedule F expense | $57,160 |
| 29 | 6/2/14 | 2013 | 1040 | BFDL 2 | Itemized deductions Schedule F expense | $60,436 |
| 30 | 6/2/14 | 2013 | 1040 | BFDL 29 | Itemized deductions Schedule F expense | $55,108 |
| 31 | 6/4/14 | 2013 | 1040 | BFDL 101 | Itemized deductions Schedule F expense | $63,863 |
| 32 | 6/10/14 | 2013 | 1041 | BFDL 52 | Schedule F expense | $60,252 |
| 33 | 6/21/14 | 2013 | 1040 | BFDL 65 | Schedule F expense | $50,067 |
| 34 | 6/24/14 | 2013 | 1040 | BFDL 72 | Schedule F expense | $17,286 |
| 35 | 6/25/14 | 2013 | 1041 | BFDL 51 | Schedule F expense | $61,031 |
| 36 | 6/30/14 | 2013 | 1041 | BFDL 19 | Unreported income Schedule F expense | $70,871 |
| 37 | 6/30/14 | 2013 | 1041 | BFDL 28 | Unreported income Schedule F expense | $71,209 |
| 38 | 6/30/14 | 2013 | 1041 | BFDL 71 | Schedule F expense | $31,882 |
| 39 | 6/30/14 | 2013 | 1041 | BFDL 91 | Unreported income Schedule F expense | $82,049 |
| 40 | 7/3/14 | 2013 | 1040 | BFDL 90 | Schedule F expense | $34,069 |
| 41 | 7/18/14 | 2013 | 1041 | BFDL 95 | Schedule F expense Fiduciary fees Charitable deduction Attorney fees | $61,412 |
| 42 | 8/18/14 | 2013 | 1040X | BFDL 94 | Schedule F expense | $47,821 |
| 43 | 9/20/14 | 2013 | 1041 | BFDL 70 | Fiduciary fees Charitable deduction | $61,872 |
| 44 | 9/20/14 | 2013 | 1041 | BFDL 82 | Fiduciary fees Charitable deduction | $62,021 |
| 45 | 1/12/15 | 2013 | 1040 | BFDL 55a | Itemized deductions Schedule C expense | $55,848 |
| 46 | 7/20/15 | 2014 | 1041 | BFDL 78 | Schedule F expense Charitable deduction | $60,853 |
| 47 | 10/17/15 | 2013 | 1041 | BFDL 21 | Charitable deduction Schedule F expense | $63,405 |
| 48 | 2/12/16 | 2015 | 1040 | HWFR 63 | Schedule F expense | $41,479 |
| 49 | 2/23/16 | 2015 | 1040 | HWFR 24 | Schedule F expense | $37,017 |
| 50 | 2/23/16 | 2015 | 1040 | HWFR 28 | Schedule C expense | $42,038 |
| 51 | 2/23/16 | 2015 | 1040 | HWFR 51 | Schedule F expense | $53,019 |
| 52 | 2/23/16 | 2015 | 1040 | HWFR 52 | Schedule F expense | $36,843 |
| 53 | 2/23/16 | 2015 | 1040 | HWFR 59 | Schedule F expense Schedule C expense | $69,760 |
| 54 | 2/23/16 | 2015 | 1041 | HWFR 60 | Schedule F expense Charitable deduction | $60,033 |
| 55 | 2/23/16 | 2015 | 1040X | HWFR 75 | Schedule F expense | $48,075 |

| CT | DATE | TAX YEAR | TAX FORM | TAX PAYER | FALSIFIED ITEMS | FALSE AMOUNT |
|----|------|----------|----------|-----------|-----------------|--------------|
| 56 | 2/23/16 | 2015 | 1040 | HWFR 81 | Schedule C expense | $37,378 |
| 57 | 2/24/16 | 2015 | 1040 | HWFR 5 | Schedule F expense | $33,454 |
| 58 | 2/24/16 | 2015 | 1040 | HWFR 14 | Schedule C expense | $26,273 |
| 59 | 2/24/16 | 2015 | 1040 | HWFR 27 | Schedule C expense | $19,422 |
| 60 | 2/24/16 | 2015 | 1040 | HWFR 37 | Schedule C expense | $39,966 |
| 61 | 2/24/16 | 2015 | 1040 | HWFR 64 | Schedule F expense | $39,312 |
| 62 | 2/25/16 | 2015 | 1040 | HWFR 22 | Schedule F expense | $41,457 |
| 63 | 2/25/16 | 2015 | 1040 | HWFR 45 | Schedule F expense | $59,387 |
| 64 | 2/25/16 | 2015 | 1040 | HWFR 73 | Schedule F expense | $43,427 |
| 65 | 2/25/16 | 2015 | 1040 | HWFR 84 | Schedule F expense Schedule C expense | $52,736 |
| 66 | 2/25/16 | 2015 | 1040 | HWFR 90 | Schedule F expense | $38,896 |
| 67 | 2/26/16 | 2015 | 1040 | HWFR 61 | Schedule F expense | $45,023 |
| 68 | 2/26/16 | 2015 | 1040 | HWFR 65 | Schedule C expense | $63,732 |
| 69 | 3/2/16 | 2015 | 1040 | HWFR 4 | Schedule F expense | $67,937 |
| 70 | 3/2/16 | 2015 | 1040 | HWFR 53 | Schedule F expense | $37,423 |
| 71 | 3/2/16 | 2015 | 1041 | HWFR 55 | Schedule C expense | $49,507 |
| 72 | 3/2/16 | 2015 | 1040 | HWFR 86 | Schedule C expense | $39,101 |
| 73 | 3/4/16 | 2015 | 1041 | HWFR 32 | Schedule C expense Charitable deduction | $60,505 |
| 74 | 3/9/16 | 2015 | 1040 | HWFR 13 | Schedule F expense | $38,692 |
| 75 | 3/10/16 | 2015 | 1040 | HWFR 31 | Schedule F expense | $50,124 |
| 76 | 3/10/16 | 2015 | 1041 | HWFR 49 | Schedule C expense Charitable deduction | $62,101 |
| 77 | 3/14/16 | 2015 | 1040 | HWFR 6 | Schedule C expense | $35,631 |
| 78 | 3/14/16 | 2015 | 1040 | HWFR 62 | Schedule C expense | $42,661 |
| 79 | 3/22/16 | 2015 | 1040 | HWFR 21 | Schedule F expense | $32,987 |
| 80 | 3/22/16 | 2015 | 1041 | HWFR 44 | Schedule F expense Charitable deduction | $61,018 |
| 81 | 3/24/16 | 2015 | 1040 | HWFR 48 | Schedule F expense | $46,548 |
| 82 | 3/29/16 | 2015 | 1040 | HWFR 57 | Schedule C expense | $34,485 |
| 83 | 4/5/16 | 2015 | 1040 | HWFR 39 | Schedule F expense | $54,383 |
| 84 | 4/5/16 | 2015 | 1041 | HWFR 47 | Schedule C expense Charitable deduction | $57,180 |
| 85 | 4/5/16 | 2015 | 1040 | HWFR 88 | Schedule F expense | $48,357 |
| 86 | 4/11/16 | 2015 | 1040 | HWFR 54 | Schedule C expense | $33,725 |
| 87 | 4/18/16 | 2015 | 1041 | HWFR 9 | Schedule F expense Charitable deduction | $60,474 |
| 88 | 4/18/16 | 2015 | 1040 | HWFR 58 | Schedule F expense | $29,752 |
| 89 | 4/27/16 | 2015 | 1040X | HWFR 18 | Schedule F expense | $45,792 |
| 90 | 5/10/16 | 2015 | 1040X | HWFR 89 | Schedule F expense | $47,530 |
| 91 | 10/13/16 | 2015 | 1040 | HWFR 78 | Schedule C expense | $41,257 |

All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.

## COUNTS 92-103

(Tax Evasion, Title 26, United States Code, Section 7201)

The Grand Jury realleges paragraphs A 1-4 of Count 9 of this Indictment.

On or about the date listed below, in the Eastern District of Arkansas and elsewhere, the defendant listed below, willfully attempted to evade and defeat income tax due and owing by her to the United States of America, for the calendar year listed below, by committing the following affirmative acts, among others:

(a)   preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent Individual Income Tax, Form 1040, and, with regard to the defendant LYNDA CHARLES for tax year 2015, a Form 1040X, which was submitted to the IRS, and

(b)   concealing and causing to be concealed income she had received from preparing and causing to be prepared, and processing and causing to be processed, claims filed with the United States for funds allegedly due claimants under either the BFDL or the HWFR settlements, that is, for tax years 2013 and 2014, income from BFDL claims, and for tax years 2015 and 2016, income from HWFR claims.

| COUNT | DEFENDANT | DATE | TAX YEAR | TOTAL INCOME REPORTED | TAX REPORTED AFTER CREDIT | UNREPORTED INCOME | TAX DUE |
|---|---|---|---|---|---|---|---|
| 92 | Rosie Bryant | 3/10/2014 | 2013 | $23,046 | ($1,806) | $171,259 | $44,162 |
| 93 | Delois Bryant | 3/17/2014 | 2013 | $20,071 | ($905) | $203,915 | $51,476 |
| 94 | Lynda Charles | 4/15/2014 | 2013 | ($7,351) | 0 | $162,944 | $29,492 |
| 95 | Lynda Charles | 4/15/2015 | 2014 | $42,328 | 0 | $71,380 | $12,234 |
| 96 | Rosie Bryant | 5/4/2015 | 2014 | $27,352 | ($1,409) | $529,376 | $179,622 |
| 97 | Delois Bryant | 9/15/2015 | 2014 | $19,963 | ($416) | $38,006 | $15,245 |
| 98 | Delois Bryant | 4/11/2016 | 2015 | $40,555 | $543 | $112,516 | $36,337 |
| 99 | Rosie Bryant | 4/26/2016 | 2015 | $24,819 | ($1,907) | $458,884 | $154,894 |
| 100 | Lynda Charles | 6/7/2016 | 2015 | $40,602 | ($1,449) | $200,819 | $57,771 |
| 101 | Lynda Charles | 4/15/2017 | 2016 | $24,571 | ($3,579) | $317,333 | $100,303 |
| 102 | Rosie Bryant | 4/15/2017 | 2016 | $25,431 | ($1,756) | $146,267 | $35,365 |
| 103 | Delois Bryant | 4/15/2017 | 2016 | $34,223 | $1,249 | $161,830 | $56,904 |

All in violation of Title 26, United States Code, Section 7201.

### COUNTS 104-105

(Section 1957 Rockwater Village money laundering)

1. The Grand Jury realleges Paragraph 5 of Counts 1-8 of this Indictment.

2.  On or about August 29, 2014, account ending in 5418 (JOVI B.OZARK 5418) was opened at Bank of The Ozarks in the name of "Delois Bryant, Jovi Women and Hispanic Litigation". DELOIS BRYANT, LYNDA CHARLES, ROSIE BRYANT and BRENDA SHERPELL were listed as signatories on the account.

3.  At various times on or before September 2015, the defendants DELOIS BRYANT, LYNDA CHARLES, ROSIE BRYANT and BRENDA SHERPELL obtained proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited, or caused to be deposited, those proceeds into JOVI B.OZARK 5418.

4.  Bank of the Ozarks is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

5.   On or about September 23, 2015, a portion of the funds that had been deposited into JOVI B.OZARK 5418 were used to purchase two cashier's checks issued by the Bank of the Ozarks, each payable to American Abstract and Title Company, that is,

a. Cashier's Check #605255, on behalf of LYNDA CHARLES, in the amount of $97,443.16 for the purchase of Lot 10, Rockwater Village, North Little Rock, Arkansas, which lot later became identified as 1501 Rockwater Lane, North Little Rock, Arkansas.

b. Cashier's Check #605256, on behalf of DELOIS BRYANT, in the amount of $87,426.66 for the purchase of Lot 11, Rockwater Village, North Little Rock, Arkansas, which lot later became identified as 1505 Rockwater Lane, North Little Rock, Arkansas.

6.   Each purchase of the cashier's check constituted a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

7.   **COUNT 104:**  On or about September 24, 2015, in the Eastern District of Arkansas,

LYNDA CHARLES and
ROSIE BRYANT

aiding and abetting one another, knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, they purchased, and caused to be purchased, Bank of the Ozarks cashier's check #605255 in the amount of $97,443.16 with funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

8.   **COUNT 105:**  On or about September 24, 2015, in the Eastern District of Arkansas,

DELOIS BRYANT
LYNDA CHARLES and
ROSIE BRYANT

aiding and abetting one another, knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with

28

criminally derived property, that is, they purchased, and caused to be purchased, Bank of the Ozarks cashier's check #605256 in the amount of $87,426.66 with funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT 106

(Section 1957 First Security Bank money laundering)

1. The Grand Jury realleges Paragraph 5 of Counts 1-8 of this Indictment.

2. On or about October 30, 2015, ROSIE BRYANT opened an account at First Security Bank in the name of DAUGHTERS OF JOVI INTERNATIONAL, LLC, that is, account ending in 5463 (JOVI FSB 5463). ROSIE BRYANT and LYNDA CHARLES were each authorized as signatory on the account.

3. First Security Bank is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

4. ROSIE BRYANT obtained proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited those proceeds into JOVI FSB 5463.

5. On or about October 30, 2015, ROSIE BRYANT made, and caused to be made, the opening deposit of $405,256.34 into JOVI FSB 5463, which consisted of the following items:

   a. Bank of the Ozarks Cashier's Check #605265 dated September 28, 2015, in the amount of $350,556.34 which had been purchased with funds from JOVI B.OZARK 5418;

   b. Bank of the Ozarks Cashier's Check #605298 dated October 13, 2015, in the amount of $24,700 which had been purchased with funds from JOVI B.OZARK 5418;

   c.   Centennial Bank Cashier's Check #552045 dated October 9, 2015, in the amount of $15,000, remitted in the name of HWFR 46;

   d.   Region's Bank Cashier's Check #5502180802 dated October 15, 2015, in the amount of $15,000, remitted in the name of HWFR 69.

6.   The deposit of checks into JOVI FSB 5463 constituted a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

7.   On or about October 30, 2015, in the Eastern District of Arkansas,

ROSIE BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she caused funds derived from the mail fraud set forth in Counts 1-8 of this Indictment to be deposited in JOVI FSB 5463.

All in violation of Title 18, United States Code, Section 1957 and 2.

<strong>COUNT 107</strong>

(Section 1957 First Security Bank/Colleyville house money laundering)

1.   The Grand Jury realleges Paragraphs 2 and 4 of Count 106 of this Indictment.

2.   On or about September 30, 2014, ROSIE BRYANT purchased a residence located at 5064 Copperglen Circle, Colleyville, Texas. The purchase price was $610,000.

3.   After paying the closing costs and making a down payment, a mortgage in the amount of $310,000 was obtained for the Copperglen Circle residence, that is, loan ending in 6252. The mortgage holder was Franklin American Mortgage Company which is headquartered in Franklin, Tennessee.

30

4.   Central Loan Administration and Reporting (CENLAR) is an agency that processed loan payments for Franklin American Mortgage Company with respect to the mortgage on the Copperglen Circle residence.  CENLAR is located in Ewing, New Jersey.

5.   On or about November 5, 2015, ROSIE BRYANT caused funds in the amount of $303,677.90 to be transferred by wire from JOVI FSB 5463 to CENLAR to pay off the mortgage loan held by Franklin American Mortgage Company on the Copperglen Circle residence.  The wire transfer of the funds constituted a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

6.   On or about November 5, 2015, in the Eastern District of Arkansas and elsewhere,

ROSIE BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she caused funds derived from the mail fraud set forth in Counts 1-8 of this Indictment to be transferred by wire from JOVI FSB 5463 to and through CENLAR on behalf of and for Franklin American Mortgage Company in the amount of $303,677.90.

All in violation of Title 18, United States Code, Section 1957 and 2.

### COUNTS 108-110

(Section 1957 First Security Bank/JP Morgan Chase money laundering)

1. The Grand Jury realleges Paragraphs 2 and 4 of Count 106 of this Indictment.

2. On or about November 28, 2012, ROSIE BRYANT opened account ending in 8680 in her own name at First Security Bank (RB FSB 8680).

3.  On or about January 7, 2016, ROSIE BRYANT opened account ending in 8028 in her own name at JP Morgan Chase Bank (RB CHASE 8028).

31

4.  First Security Bank and JP Morgan Chase Bank are financial institutions within the meaning of Title 18, United States Code, Section 1957(f)(1).

5.  On January 5, 2016, ROSIE BRYANT caused $121,000 to be moved from JOVI FSB 5463 to her individual account at First Security Bank, that is, RB FSB 8680.

6.  On January 7, 2016, ROSIE BRYANT wrote check #1158 on RB FSB 8680 for $120,000 and deposited the check into her account at JP Morgan Chase, that is, RB CHASE 8028.

7.  On March 2, 2016, ROSIE BRYANT obtained a JP Morgan Chase cashier's check #9430218969 in the amount of $179,019.19 which contained the $120,000 of funds referenced above.

8.  On April 6, 2016, ROSIE BRYANT deposited the cashier's check referenced above into her account at First Security Bank, that is, RB FSB 8680.

9.  The transfer of funds from one account to another, the deposit of a check into an account, and the purchase of a cashier's check are each a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

10.  **COUNT 108:**  On or about January 5, 2016, in the Eastern District of Arkansas,

ROSIE BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she transferred and caused to be transferred from one bank account to another funds derived from the mail fraud set forth in Counts 1-8 of this Indictment, that is, $121,000 from JOVI FSB 5463 to RB FSB 8680.

11.  **COUNT 109:**  On or about January 7, 2016, in the Eastern District of Arkansas,

ROSIE BRYANT

knowingly engaged in and caused a monetary transaction of a value

32

greater than $10,000 with criminally derived property, that is, she deposited check #1158 written on RB FSB 8680 in the amount of $120,000 into RB CHASE 8028 which were funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

12.   **COUNT 110**:   On or about April 6, 2016, in the Eastern District of Arkansas,

ROSIE BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she deposited JP Morgan Chase cashier's check #9430218969 in the amount of $179,019.19 into RB FSB 8680 which included more than $10,000 of funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

**COUNT 111**

(Section 1957 Centennial Bank money laundering)

1.   On or about January 4, 2016, DELOIS BRYANT opened an account at Centennial Bank, that is, account number ending in 5414 (DB CTLBANK 5414).

2.   Centennial Bank is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

3.   DELOIS BRYANT obtained proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited, and caused to deposited, those proceeds into DB CTLBANK 5414.

4.   The deposit of cashier's checks constituted a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

5. On or about January 4, 2016, in the Eastern District of Arkansas,

DELOIS BRYANT

knowingly engaged in and caused a monetary transaction of a value

33

greater than $10,000 with criminally derived property, that is, she caused funds derived from the mail fraud set forth in Counts 1-8 of this Indictment to be deposited in DB CTLBANK 5414, that is, approximately $63,000 consisting of eight (8) cashier's checks each remitted in the name of an HWFR claimant.

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT 112

(Section 1957 Arvest Bank/Chevrolet Van money laundering)

1.   The Grand Jury realleges Paragraph 4 of Counts 1-8 of this Indictment.

2.   On or about October 16, 2013, account #1196 at Arvest Bank was opened in the name "Delois Bryant doing business as Destiny by Design" (DD ARVEST 1196).  LYNDA CHARLES, DELOIS BRYANT, and ROSIE BRYANT were signatories on the account.

3.  On or about December 1, 2015, LYNDA CHARLES opened account #0826 at Arvest Bank in the name of "Destiny By Design Church Park Hill" (LC ARVEST 0826).  LYNDA CHARLES, DELOIS BRYANT, and ROSIE BRYANT were signatories on the account.

4. LYNDA CHARLES and DELOIS BRYANT obtained proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited, and caused to deposited, those proceeds into DD ARVEST 1196.

5.   On or about March 8, 2016, the funds referred to in Paragraph 4 above, were transferred from DD ARVEST 1196 to LC ARVEST 0826.

5.   On or about May 3, 2016, LYNDA CHARLES purchased a 2016 Chevrolet Express Van (VIN ending in 5286) from Reliable Chevrolet, Richardson, Texas.  The total purchase price was $58,959.56.  As partial payment, LYNDA CHARLES wrote check #523 on account LC ARVEST 0826 in the amount of $45,000 payable to Reliable Chevrolet.

6.   Arvest Bank is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

7.   The withdrawal of funds by check is a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

8.   On or about May 3, 2016, in the Eastern District of Arkansas,

LYNDA CHARLES

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she withdrew $45,000 from LC ARVEST 0826 by check #523 payable to Reliable Chevrolet, which were funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

<b><u>COUNT 113</u></b>

(Section 1957 Centennial Bank/Mercedes Benz money laundering)

1.   The Grand Jury realleges Paragraphs 1-3 of Counts 111 of this Indictment.

2.   From on or about January 4, 2016 to on or about June 2, 2016, DELOIS BRYANT obtained additional proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited, and caused to be deposited, those proceeds into DB CTL 5414.

3.   On or about July 20, 2016, DELOIS BRYANT purchased a 2016 Mercedes Benz G550 (VIN ending in 8311) from Mercedes Benz of Little Rock, Arkansas.   The total purchase price was $113,271.95.

4.   On or about July 21, 2016, as part of the payment for the 2016 Mercedes G550, DELOIS BRYANT wrote check #2133 drawn on DB CTLBANK 5414 for the amount of $91,771 payable to Mercedes Benz of Little Rock.

35

5.   The withdrawal of funds by check constituted a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

6.   On or about July 21, 2016, in the Eastern District of Arkansas,

DELOIS BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she withdrew, by means of check #2133 in the amount of $91,771.00, funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

**COUNT 114**

(Section 1957 AFCU/Doyle Springs house money laundering)

1.   On or about April 9, 2007, DELOIS BRYANT opened account #2578 at Arkansas Federal Credit Union in her own name (DB AFCU 2578).  LYNDA CHARLES was also a signatory on the account.

2.   DELOIS BRYANT obtained proceeds from the mail fraud set forth in Counts 1-8 of this Indictment and deposited, and caused to deposited, those proceeds into DB AFCU 2578.

3.   On or about June 6, 2016, DELOIS BRYANT purchased the residence at 8117 Doyle Springs Road, Little Rock, Arkansas for $120,000.

4.  On or about August 11, 2016, DELOIS BRYANT obtained AFCU Cashier's Check #17884 in the amount of $36,528.34 payable to Waco Title using funds from DB AFCU 2578 to do so.  The cashier's check was given to Waco Title as partial payment for the Doyle Springs Road residence at the loan closing on that property.

5.  Arkansas Federal Credit Union is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

6.  The withdrawal of funds from an account and the purchase of a cashier's check are each a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

7. On or about August 11, 2016, in the Eastern District of Arkansas,

DELOIS BRYANT

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she purchased AFCU Cashier's Check #17884 in the amount of $36,528.34 with funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

**COUNT 115**

(Section 1957 Centennial Bank/Navient money laundering)

1. The Grand Jury realleges Paragraphs 2 and 4 of Count 106 and Paragraphs 2,3 and 5-8 of Counts 108-110 of this Indictment.

2.  From on or about February 2, 2016 to on or about December 15, 2016 additional proceeds from the mail fraud set forth in Counts 1-8 were deposited, and caused to be deposited into JOVI FSB 5463.

3.  From on or about September 27, 2016 to on or about December 15, 2016 additional proceeds from the mail fraud set forth in Counts 1-8 were deposited, and caused to be deposited into RB FSB 8680.

4.  On or about January 20, 2016 LYNDA CHARLES opened account ending in 3909 in her own name at Centennial Bank (LC CTLBANK 3909).

5.  LYNDA CHARLES obtained proceeds from the mail fraud set

forth in Counts 1-8 of this Indictment and deposited, and caused to be deposited, those proceeds into LC CTLBANK 3909.

6.   On or about December 15, 2016 LYNDA CHARLES deposited and caused to be deposited the following proceeds into LC CTLBANK 3909:

        a. Check #1169 in the amount of $14,000 drawn from RB FSB 8680;

        b. Cashier's Check #839170 in the amount of $22,000 drawn from RB FSB 8680;

        c. Cashier's Check #839169 in the amount of $10,000 drawn from JOVI FSB 5463.

7.   Navient is a company that, among other things, provided loan processing services to the United States Department of Education for receipt of payment for outstanding student loans.

8.   On or about December 23, 2016, LYNDA CHARLES caused electronic transfer of funds from LC CTLBANK 3909 in the amount of $200,000 to Navient to pay on a student loan for her daughter owed to the United States Department of Education.

9.   Centennial Bank is a financial institution within the meaning of Title 18, United States Code, Section 1957(f)(1).

10.  The withdrawal of funds by electronic transfer from an account is a "monetary transaction" as defined in Title 18, United States Code, Section 1957(f)(1).

11.  On or about December 23, 2016, in the Eastern District of Arkansas,

LYNDA CHARLES

knowingly engaged in and caused a monetary transaction of a value greater than $10,000 with criminally derived property, that is, she withdrew $200,000 from LC CTLBANK 3909 by electronic transfer to Navient which were funds derived from the mail fraud set forth in Counts 1-8 of this Indictment.

All in violation of Title 18, United States Code, Section 1957 and 2.

## FORFEITURE ALLEGATION ONE

Upon conviction of any of the offenses charged in Counts 1 through 8 of this Indictment, the defendants, LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT, BRENDA SHERPELL, NIKI CHARLES, and EVERETT O. MARTINDALE, shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following specific property:

1.   A monetary judgment that represents all property constituting or derived from proceeds traceable to the offense that the defendant obtained:

   a.   Defendant LYNDA CHARLES, ROSIE BRYANT, DELOIS BRYANT, and BRENDA SHERPELL each obtained at least $2,176,000 from the fraud scheme;

   b.   Defendant NIKI CHARLES obtained at least $90,668 from the fraud scheme;

   c.   Defendant EVERETT O. MARTINDALE obtained at least $51,000 from the fraud scheme;

2.   The property and residence located at 1505 Rockwater Lane, North Little Rock, Arkansas 72114 and commonly referred to as Rockwater Village – Lot 11;

3.   The property and residence located at 1501 Rockwater Lane, North Little Rock, Arkansas 72114 and commonly referred to as Rockwater Village – Lot 10;

4.   The property and residence located at 5064 Copperglen Circle, Colleyville, Texas 76034;

## FORFEITURE ALLEGATION TWO

Upon conviction of any of the offenses charged in Counts 104 through 115 of this Indictment, the defendants, LYNDA CHARLES, ROSIE BRYANT, and DELOIS BRYANT, shall forfeit to the United States, under Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the offense, and all property that is traceable to the property involved in the offense, including, but not limited to, the following specific property:

1.    A money judgement that represents all property involved in the money laundering activity received by the defendant:

        a. Defendant LYNDA CHARLES obtained property valued at least at $429,869.82;

        b.  Defendant ROSIE BRYANT obtained property valued at least at $1,313,813.25;

        c. Defendant DELOIS BRYANT obtained property valued at least at $278,726;

2.    The property and residence located at 1505 Rockwater Lane, North Little Rock, Arkansas 72114 and commonly referred to as Rockwater Village – Lot 11;

3.    The property and residence located at 1501 Rockwater Lane, North Little Rock, Arkansas 72114 and commonly referred to as Rockwater Village – Lot 10;

4.    The property and residence located at 5064 Copperglen Circle, Colleyville, Texas 76034;